```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA
                       Richmond Division
```

ROBIN KARNETTE, and
DIANE MCINTYRE,

    Plaintiffs,

v.                                      Civil Action No. 3:06cv44

WOLPOFF & ABRAMSON,
L.L.P.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant WOLPOFF & ABRAMSON, L.L.P.'S MOTION TO COMPEL ARBITRATION (Docket No. 21). For the foregoing reasons, the motion is DENIED.

## STATEMENT OF FACTS

Robin Karnette and Diane McIntyre were issued credit cards by MBNA America Bank, N.A. ("MBNA") and used the credit cards for personal, household and family purposes. Karnette and McIntyre became indebted, and following their defaults, MBNA referred the accounts for collection to Wolpoff & Abramson, L.L.P. ("W&A"), a multi-state collections law firm. It is undisputed that the activities of W&A in its representation of MBNA in the collection of the debts from Karnette and McIntyre bring W&A within the purview of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 <u>et</u> <u>seq.</u>.

On January 18, 2006, Karnette and McIntyre filed a class action against W&A, alleging that, the law firm engaged in false,

deceptive and unfair debt collection practices in violation of the FDCPA and requesting damages and injunctive relief.  On February 21, 2006, W&A filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Karnette and McIntyre did not respond to the motion to dismiss.  Instead, on March 6, 2006, they filed their First Amended Class Action Complaint (Docket No. 8) (the "Amended Complaint").

Count I of the Amended Complaint alleges that W&A violated the FDCPA by using a sham arbitration proceeding and by using arbitration to improperly increase the amount of attorney's fees (and thereby increased the amount of the debt) for which the plaintiffs were liable.  In Count II, the plaintiffs seek injunctive relief under Virginia law.  On March 13, 2006, W&A's motion to dismiss the original Complaint was denied as moot in view of the Amended Complaint.

On March 20, 2006, W&A filed its Answer to the Amended Complaint (Docket No. 11), a Motion to Dismiss the Amended Complaint under Rule 12(b)(6) (Docket 12), and a Motion for Summary Judgment (Docket No. 14).  None of those pleadings requested that the matter be referred to arbitration.  On April 7, 2006, the plaintiffs filed their responses to the Motion for Summary Judgment and Motion to Dismiss (Docket Nos. 18, 19).  Those responses outlined in detail the plaintiffs' case against W&A.  On April 14, 2006, 25 days after filing the Motion to Dismiss the Amended Complaint and the Motion for Summary Judgment and seven days after

learning the details, and the strength, of the plaintiffs' case, W&A filed the Motion to Compel Arbitration.

On May 23, 2006, the Court granted W&A's Motion to Dismiss Count II of the Amended Complaint.  However, the motion was denied as to Count I.

The Motion to Compel Arbitration is based on a provision in the MBNA credit card agreements entitled "Arbitration and Litigation."[1]  The first part of that section states:

> <u>Any claim or dispute</u> ("Claim") <u>by either you</u> or us against the other, or <u>against the</u> employees, <u>agents</u>, or assigns <u>of the other</u>, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise, and whether for money damages, penalties, or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration and Litigation section of the validity of the entire Agreement or any prior Agreement, <u>shall be resolved by binding arbitration</u>.

(Exh. A to PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO COMPEL ARBITRATION (Docket No. 25) at 4) (emphasis added).)  The definitions part of the Arbitration and Litigation section provides that:

---

[1] The plaintiffs do not contest the fact that, by their use of their MBNA credit card, they agreed to the terms of the credit card agreement.

> For the purposes of this Arbitration and Litigation section, "we" and "us" means MBNA American Bank, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents, and assigns or any and all of them.  Additionally, "we" and "us" shall mean <u>any third party providing</u> benefits, <u>services</u>, or products <u>in connection with the account (including</u> but not limited to . . . <u>debt collectors</u>, and all other officers, directors, employees and agents) <u>if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us</u>.

(<u>Id.</u> at 5.)

W&A argues that it was the agent of MBNA when it represented MBNA in the arbitration proceedings that led to judgment against the plaintiffs.  Therefore, says W&A, the dispute presented in Count I of the Amended Complaint is subject to arbitration under the first paragraph of the Arbitration and Litigation section of the MBNA credit card agreement.

The plaintiffs oppose the motion for four reasons which can be summarized as follow:

(1) there is no agreement to arbitrate the claims against W&A because the MBNA credit card agreement does not require arbitration of claims against debt collectors;

(2) the arbitration clause is unconscionable and fraudulent because the consumer protections within it are illusory;

(3)  W&A may not seek to enforce the arbitration clause because, by violating the FDCPA, W&A has materially breached the agreement, and cannot simultaneously seek to enforce it; and

(4)  W&A has waived its right to arbitration.

## DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et. seq., declares that "a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Fourth Circuit has stated that

> [t]he purpose behind Congress's passage of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA therefore eliminates any bias in favor of judicial resolution of disputes, and establishes that where a contract includes an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone[Mem'l Hosp. v. Mercury Constr. Copr.], 460 U.S. [1] at 24-25 [1983].

Dockser v. Schwartzberg, 433 F.3d 421, 425 (4th Cir. 2006) (internal citations edited for this opinion).

An agreement to arbitrate is a contract and "the examination of the scope of an arbitration agreement is primarily a task of contract interpretation." Cara's Notions v. Hallmark Cards, Inc.,

5

140 F.3d 566, 569 (4th Cir. 1998).  While ambiguities in the <u>scope</u> of the arbitration clause are to be resolved in favor of arbitration, <u>Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.</u>, 489 U.S. 468, 475-76 (1989), both the Supreme Court and the Fourth Circuit have recognized that "[t]he question whether the parties have submitted a particular dispute to arbitration, <u>i.e.</u> the '<u>question of arbitrability</u>,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." <u>Howsam v. Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002) (cited in <u>Dockser</u>, 433 F.3d at 425) (emphasis in original); <u>see</u> <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).  The question of arbitrability exists

> in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

<u>Howsom</u>, 537 U.S. at 83-84 (quoted in <u>Dockser</u>, 433 F.3d at 426). "[B]ecause the legal predicate of compulsory arbitration is contractual consent, courts can require arbitration only of those disputes which the parties have agreed to arbitrate." <u>Hendrick v. Brown & Root, Inc.</u>, 50 F. Supp. 2d 527, 532 (E.D.Va 1999) (citing <u>Gateway Coal Co. v. United Mine Workers of America</u>, 414 U.S. 368, 374 (1974); <u>Gen. Drivers, Warehousemen, and Helpers Local Union No.</u>

6

509 v. Ethyl Corp., 68 F.3d, 80, 83 (4th Cir.1995)). Accordingly, it is necessary to decide whether the MBNA agreement provides for arbitration of the dispute over whether W&A's debt collection practices violated the FDCPA. To do so, the Court must examine the language of the arbitration provision in the MBNA credit card agreement.

If there is an agreement to arbitrate an issue, a party to the arbitration contract is entitled to a stay of litigation pending arbitration "[p]rovided the applicant for the stay is not in default" of its right to proceed with arbitation. 9 U.S.C. § 3; Patten Grading and Paving v. Skanska USA Bldg., 380 F.3d 200, 204 (4th Cir. 2004). Whether there is such a default or waiver is an issue for the court. Id. Because of the "strong federal policy favoring arbitration, '[the Fourth Circuit] will not lightly infer the circumstances constituting waiver.'" Id. (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996).

While the credit card agreement states that generally it shall be governed by the law of the State of Delaware, the Arbitration and Litigation section provide that it shall be governed by the FAA. Under the FAA, a court is to apply ordinary state law principles of contract construction respecting the making of contracts. First Option, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter (including

arbitrability), courts generally . . . should apply ordinary state law principles that govern the formation of contracts.") Therefore, for the purposes of interpreting the arbitration agreement, the Court will apply generally accepted Delaware state law contract principles.  See Id.

### I. Whether There Was An Agreement To Arbitrate A Debt Collector's Violation Of The FDCPA

The arbitration agreement provides that:"[a]ny claim or dispute ("Claim") by either you or us against the other. . ., shall be resolved by binding arbitration."  Where the credit card user (i.e. "you") files a claim, "the other" is "us." In the definitional section of the arbitration agreement, "us" is defined to include "any third party providing benefits, services, or products in connection with the account (including but limited to . . . debt collectors . . . and all other . . . agents) if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us." (emphasis added).  Accordingly, substituting the definition of "us" for the word "us" in the first sentence of the Arbitration and Litigation section, the arbitration agreement states that arbitration is required for "any claim or dispute by . . . you . . . against 'any third party providing . . . services, . . . in connection with the account (including but not limited to . . . debt collectors . . . and all other . . . agents)

8

if, and only if, such a third party is named by you as a codefendant in any Claim you assert against us.'"

This construction is clear and makes sense. By putting the Arbitration and Litigation section in the credit card agreement, MBNA sought to limit its exposure, and the exposure of all in its corporate family, to litigation in court. It also foresaw that plaintiffs might sue third party entities together with MBNA. Therefore, MBNA wrote a clause into the arbitration agreement that required arbitration where MBNA was joined as a co-defendant in a suit against a third party. However, for obvious reasons, MBNA had less reason for concern about suits against third parties where MBNA was not a co-defendant. Thus, given its plain meaning and accorded a common sense construction, the arbitration clause does not operate here because MBNA is not a co-defendant in this action.

W&A argues that, as a law firm working for MBNA, it is an agent of MBNA, and, therefore, is a named third party beneficiary of the arbitration provision. Cf. Brantley v. Republic Mortgage, 424 F.3d 392, 396-97 (4th Cir. 2005) (finding Republic was not a third party beneficiary of the arbitration clause because "the language of the [contract] does not clearly indicate that, at the time of contracting, the parties intended to provide [Republic] with a direct benefit."). As such, W&A claims that it is protected from suit by reading the arbitration clause to state, "any claims

9

by . . . you . . . against the . . . agents . . . of the other . . . shall be resolved by binding arbitration."

However, it is undisputed that W&A is a "debt collector" as that term is defined in the FDCPA.[2]  Where a contract specifies different rights to different specifically mentioned entities, the contract must be interpreted to require that specificity.  See <u>DCV Holdings, Inc. v. ConAgra, Inc.</u>, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one.") (citing <u>Katell v. Morgan Stanley Group, Inc.</u>, 1993 WL 205033 at *4 (Del. Ch. 1993); <u>Sonitrol Holding Co. v. Marceau Investissements</u>, 607 A.2d 1177, 1184 (Del. 1992)); <u>see</u> <u>generally</u> Am. Jur. Contracts

---

[2] The FDCPA states that:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C § 1692a(6) (2004).  A search of the Delaware Annotated Code and the reported cases of the courts of Delaware did not find a state-law definition of "debt collector."

§ 363[3]. Otherwise, the use of two different terms would be mere surplusage. <u>Colautti v. Franklin</u>, 439 U.S. 379 (1979) (one clause should not be read to render another inoperative).

Because the credit card agreement specifically mentions debt collectors in the arbitration provision, that term cannot be construed to be without purpose. While a debt collector may function as an agent for the specific purpose of collecting debts, time-honored principles of contract construction require a thing specifically named to be specifically treated. E.g. <u>Bock v. Perkins</u>, 139 U.S. 628, 634 (1891) ("The particular description [in the contract] must control the . . . general description. . ..");  <u>DCV Holding Inc., v. ConAgra, Inc.</u>, 889 A.2d 954, 961 (Del. 2005) ("Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one."); <u>State v. Greger</u>, 559 N.W.2d 854 (N.D. 1997) ("An age-old precept of

---

[3] That section reads, in part:

> In general, where there are general and special provisions in a contract relating to the same thing, the special provisions control . . .. Where the parties express themselves in reference to a particular matter, the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter, within which the particular matter may be included, does not necessarily indicate that the parties had the particular matter in mind.

Am. Jur. Contracts § 363.

contract interpretation requires that agreements be interpreted as a whole to give meaning to all terms, but when provisions conflict so that all cannot be given full weight, the more specific clauses are deemed to reflect the parties' intentions – a specific provision controls a general one."). Accordingly, W&A is to be treated as a debt collector rather than as a general agent because W&A functioned only to serve MBNA for the purpose of collecting overdue credit card debts. By the terms of the arbitration agreement, there is no agreement to arbitrate the claim against W&A under the FDCPA because the plaintiffs' action does not name MBNA as a co-defendant.

Ordinarily, that would end the matter because it is preferable not to decide cases on alternative grounds. <u>Karsten v. Kaiser Found Health Plan of the Middle Atlantic States, Inc.</u>, 36 F.3d 8, 11 (4th Cir. 1994). However, here alternative bases exist for denying the Motion to Compel Arbitration; and, in the interest of judicial economy, it is preferable to address those issues as well. <u>See</u> <u>id.</u> ("from the perspective of judicial economy, alternative holdings are a welcome blessing for courts at all levels").

**II.  If Construed As W&A Urges, The Arbitration Clause Is Ambiguous**

If, as W&A says, the construction just articulated is faulty, then the Arbitration and Litigation section is, at best, ambiguous. That is, if debt collectors are a subset of agents, then a suit against a debt collector should be sent to arbitration pursuant to

the first sentence of the arbitration provision. However, if debt collectors are a group separate and apart from agents, a suit against a debt collector will be sent to arbitration only if MBNA is named as a co-defendant. If W&A is correct in its assertion, and if, as here, a party sues only a debt collector, then the arbitration agreement requires the impossible result that the case both go to arbitration and that it does not. That, of course, would be an absurd construction and also it demonstrates the ambiguity of the arbitration provision if construed as W&A urges.

It is axiomatic that ambiguity in a contract is construed against the drafter. Kaiser Aluminum Corp. v. Matheson, 681 A.2d 392, 398 (Del. Super. 1996) ("It is a well-accepted principle that ambiguities in a contract should be construed against the drafter." (citing Restatement (Second) of Contracts § 206 (1981); see also Arthur L. Corbin, et. al., Corbin on Contracts § 559, supp. at 337 (1960 & Supp. 1996) (the cannon is "imposed as a matter of public policy as a penalty for bad draftsmanship")); 11 Williston on Contracts 32:12 "Contra proferentum: Ambiguities Interpreted Against Drafter" (4th ed.). This is especially the case in so-called "contracts of adhesion," such as this one, where one of the parties to the contract has no bargaining opportunity. Graham v. State Farm Mut. Auto Ins. Co., 565 A.2d 908, 912 (Del. 1989) (As applied to contracts of adhesion, "[i]f there is an ambiguity in the terms of the contract, that ambiguity will be resolved against

13

the party who drafted the contract. See <u>E.I. du Pont de Nemours & Co. v. Shell Oil Co.</u>, Del. Super., 498 A.2d 1108, 1114 (1985)."); <u>North Am. Phillips Corp. v. Aetna Ca. and Sur. Co.</u>, 1995 WL 628441 at *3 (Del. Super. 1995) ("The well settled doctrine of <u>contra proferentum</u>, which literally means, "against the offeror," requires that ambiguity in non-negotiated or adhesion contracts to be construed against the profferer. <u>Carr v. Maryland Casualty Co.</u>, 388 N.Y.S.2d 196, 198 (1976).").

Notwithstanding the federal policy favoring arbitration, the rule of <u>contra proferentum</u> applies to arbitration clauses just as to other contractual terms. <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 50, 64 (1995). In <u>Mastrobuono</u>, assessing two conflicting terms in an arbitration provision, the Supreme Court held that the "respondents cannot overcome the common-law rule of contract interpretation that a court should construe ambiguous language against the interests of the party that drafted it. [citations] Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt." <u>Id.</u> (citing relevant state law cases). As the Supreme Court explained, "[t]he reason for the rule is to protect the party who did not choose the language from an unintended or unfair result." <u>Id.</u> (quoting, in note 10, the Restatement (Second) of Contracts 206, Comment a (1979).) Here, ambiguity is to be resolved to protect the plaintiffs, who did not choose the language of the credit card

agreement.  As the alleged agent of MBNA, W&A can rise no higher than could MBNA.  Thus, if the agreement is construed as urged by W&A, it must accept the ambiguity created by MBNA and the consequences thereof, and, for that alternative reason, the motion to compel arbitration must be denied.

### III. Waiver

The plaintiffs also assert that, whatever the meaning of the arbitration agreement, the motion to compel arbitration must be denied because W&A has waived its right to move to compel arbitration.[4]  Indeed, one exception to policy favoring arbitration expressed in the FAA is waiver or default of the right to move to compel arbitration.  As the Fourth Circuit has explained:

> To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, "provid[ed] the applicant for the stay is not in default" of that right. 9 U.S.C. § 3. Such default or waiver arises when the party seeking arbitration "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th Cir. 1985). However, in concert with other circuits, we have consistently held that because of the strong federal policy favoring

---

[4] See Karsten, 36 F.3d at 11 (alternative holdings acceptable).

> arbitration "we will not lightly infer the circumstances constituting waiver." Am. Recovery Corp., 96 F.3d at 95. The party opposing arbitration on the basis of waiver thus bears a "heavy burden." Micro-Strategy[Inc. v. Lauricia], 268 F.3d [244] at 251 [(4th Cir. 2001)] (internal quotations omitted); Am. Recovery Corp., 96 F.3d at 95.

Patten, 380 F.3d at 204 (internal citations truncated for use herein). Thus, it is necessary to determine whether W&A has "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice" the plaintiffs. See id.

The plaintiffs argue that W&A's delay in filing its Motion to Compel Arbitration requires denying the motion. However, the Fourth Circuit repeatedly has held that a delay of three months between the filing of a complaint and the filing of a motion to compel arbitration does not alone constitute waiver. Maxum Founds., 779 F.2d at 982 (no prejudice in a delay of three months); In re Mercury Const. Corp., 665 F.2d 933, 939 (4th Cir. 1981) (same); Carolina Throwing Co. v. S & E Novelty Corp., 442 F.2d 329, 330 (4th Cir. 1971) (same); see Patten, 380 F.3d at 205 (delay of four months not alone prejudicial). Here, W&A only delayed six weeks between the filing of the Amended Complaint and the filing of the Motion to Compel Arbitration. Even if measured from the date the original Complaint was filed, the delay is four months. Such

a delay – however measured – is not, standing alone, grounds to find a waiver.

"The movant's participation in litigation activity alone will not suffice [to constitute waiver], as the dispositive question is whether the plaintiffs have suffered any actual prejudice." Patten, 380 F.3d at 206.  Neither the filing of an answer, counterclaim, Carolina Throwing, 442 F.2d at 330, or a declaratory judgment action, Am. Recovery Corp., 96 F.3d at 96, nor responding to motions filed by the non-movant, Patten, 380 F.3d at 206, nor pursuing discovery that does not prejudice the non-movant, Maxum Founds., 779 F.2d at 982, nor decisions on non-dispositive motions such as unrelated state-law claims or discovery challenges, Microstrategy, 268 F.3d at 250, will, without a greater showing of prejudice, constitute a waiver.

However, "where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (quoting Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1161 (5th Cir. 1986)).  By filing its motion for summary judgment, W&A forced the plaintiffs to present their case in the responsive pleading mandated under the Federal Rules of Civil

17

Procedure.  In doing so, plaintiffs argue, W&A got a full view of the plaintiffs' case, which enabled W&A to reassess its chances of winning the case and to revise its litigation strategy.  Having obtained this strategic advantage, plaintiffs' argue, W&A then shifted strategies and moved to compel arbitration.  It did not even file a reply to the plaintiffs' response to the summary judgment motion.

In <u>Fraser</u>, the Fourth Circuit found that Fraser, the non-movant, was prejudiced where Fraser "had to respond to a number of <u>potentially</u> damaging motions, including a motion for partial summary judgment and three motions to dismiss."  <u>Id.</u> (emphasis added).  The district court had granted in part Merrill Lynch's partial motion for summary judgment and, due to delays in pre-trial proceedings, had reset trial dates twice before Merrill Lynch filed the motion to compel arbitration.  <u>Id.</u>  On those grounds, the Court of Appeals held that Fraser had been prejudiced and, therefore, Merril Lynch had waived its right to move to compel arbitration. <u>Id.</u>

Here, W&A filed a motion to dismiss and a motion for summary judgment on the Amended Complaint.  Both motions, if granted would be dispositive rulings on the merits of the Amended Complaint.  Indeed, the Court ruled on the Motion to Dismiss, dismissing Count II of the Amended Complaint.  Unquestionably, as a result of W&A's motion to dismiss, the plaintiffs have been prejudiced as to Count

18

II.  Although the Court denied the Motion to Dismiss the Amended Complaint as to Count I, the Court nevertheless made a ruling. <u>See</u> Order of May 23, 2006 (Docket No. 29).  That is, through its dispositive motions, W&A has subjected the plaintiffs to a sort of "civil jeopardy."  The fact that W&A's motion to dismiss partially failed does not mean that W&A's actions did not cause prejudice to the plaintiffs on those motions.

Additionally, the plaintiffs responded (Docket No. 18) to W&A's Motion for Summary Judgment, requested discovery prior to a ruling on that motion (Docket 20), and the Court denied the motion for summary judgment without prejudice and granted the requested discovery (Docket no. 24).  Although this ruling was in the plaintiffs' favor, W&A clearly availed itself of the machinery of litigation when it filed the motion to dismiss and the motion for summary judgment.  The Court agrees with plaintiffs that W&A obtained an unfair litigation advantage by forcing the plaintiffs to respond to the motion for summary judgment and then taking a different tact.  The fact that W&A did not file a reply to the plaintiffs' response to the motion for summary judgment evidences this strategy.

In addition, W&A's use of the litigation machinery is not excused merely because the Court did not decide the motion to dismiss or the motion for summary judgment entirely in the defendant's favor.  At any point before the May 23, 2005 order,

19

the Court could have ruled on the Motion for Summary Judgment, and that would have had a decidedly dispositive and prejudicial effect on the plaintiffs if they had lost on those motions.

For the foregoing reasons, the record establishes that W&A has waived any right it may have to arbitration of the plaintiffs' dispute against it for violations of the FDCPA.  For that alternate reason, the Motion to Compel Arbitration will be denied.

## CONCLUSION

For the forgoing reasons, the Motion to Compel Arbitration will be denied.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

/s/
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: August 2, 2006