**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ROBIN KARNETTE,
et al.,

     Plaintiffs,

v.                         Civil Action No.: 3:06cv44

WOLPOFF & ABRAMSON,
L.L.P.,

     Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Docket No. 47).  For the reasons set forth below, the motion is DENIED in part and GRANTED in part.

## I.   BACKGROUND

### A.   The Proposed Class And Class Claims

Plaintiffs Robin Karnette and Diane McIntyre filed a two-count class action complaint against Wolpoff & Abramson, LLP, ("W&A") for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et. seq.  The proposed class is defined as:

- All persons with addresses in Virginia;

- From whom W&A has or will obtain or attempt to obtain an arbitration award through an arbitral process with non-participatory process;

- Where the alleged debt at issue is shown by W&A's records to be primarily for personal, family, or household purposes;

- Within one year from the filing of the complaint through certification.

Count I alleges that W&A:

- Misrepresented the character, amount, or legal status of the class members' debts in violation of FDCPA subsection 1692e(2)(A);

- Threatened action that cannot legally be taken or that is not intended to be taken in violation of FDCPA subsection 1692e(5);

- Used false, deceptive, or misleading representations or means in an attempt to collect a debt in violation of FDCPA subsection 1692e(10)

Count II, which sought state law injunctive relief, was dismissed under Fed. R. Civ. P. 12(b)(6).

## B.   W&A's Notice Letters And Collections

W&A is a debt collection law firm that counts among its clients various credit card issuers.  Like many credit card agreements, the ones at issue here provide for binding arbitration before the National Arbitration Forum ("NAF").  Where such agreements apply, W&A pursues collection in arbitration before the NAF.

NAF arbitrations are governed by an internal "NAF Code of Procedure" which provides for two types of hearings: (1) "Document" hearings, in which the parties submit documents but do not participate, see NAF Rule 28; and (2) "Participatory" hearings, in which the parties participate a manner analogous to informal proceedings in courts not of record.[1]  See NAF Rule 33.  Unless a

---

[1] There are three types of Participatory hearings: In-person; Telephone, and On-line.  See NAF Rule 26.  The NAF Code of Procedure was amended during the time period covered by this

party selects a Participatory hearing, the arbitration takes place in a Document hearing.  <u>See</u> NAF Rule 25.  A party may select a Participatory hearing by following several steps.[2]  If the party fails to follow this procedure, the party waives its right to a Participatory hearing, and NAF conducts a Document hearing to arbitrate the claim.  <u>See</u> NAF Rule 26.

When W&A commences an arbitration action to collect a debt, it sends a Notice of Arbitration to the debtor.  During the time period covered by this case, W&A sent out two different versions of the Notice of Arbitration letter.

Before August 25, 2005, W&A issued the "2003 Notice," which is attached as Appendix A to the July 1, 2003 NAF Code of Procedure. The 2003 Notice informs the debtor that a claim has been filed, advises that "You have a number of options at this time," and summarizes those "options" in three paragraphs.  In the second paragraph, captioned "Demand a Document Hearing or a Participatory Hearing," the 2003 Notice reads,

---

dispute, and there are 2003, 2005, and 2006 Codes of Procedure. For the purposes of this case, the relevant procedures governing the conduct of "Document" and "Participatory" hearings are identical.

[2]  These steps include fifteen-day advanced request to NAF in writing, selection from one of the three types of Participatory hearings, and serving notice of the Participatory hearing to other parties.  <u>See</u> NAF Rule 26(A).

> You may request a Hearing in your Response or
> in a separate writing. *Unless you have agreed*
> *otherwise, an In-person Participatory Hearing*
> *will be held* in the Judicial District where
> you reside or do business.

(emphasis added).

From August 26, 2005 through, apparently, the date on which this action was filed, W&A used the "2005 Notice,"[3] which is attached as Appendix A to the January 1, 2005 NAF Code of Procedure. The 2005 Notice is similar to the 2003 Notice, but the second paragraph is changed. The second paragraph is captioned, "Select a Document Hearing or a Participatory Hearing," and it reads,

> You may request a Hearing in your Response or
> in a separate writing. You may select a
> Document or Participatory Hearing, and you may
> also request a Hearing on-line or by
> telephone. If an In-Person Participatory
> Hearing is selected, it will be held in the
> federal Judicial District where you reside or
> do business, unless you have agreed otherwise.

If the debtor does not respond to W&A's initial Notice of Arbitration, NAF sends out a Second Notice of Arbitration, which explains the NAF procedures differently. It informs that the debtor may "[r]equest a Document hearing, and In-person Participatory Hearing where you reside or do business, or an On-

---

[3]   The NAF web site features a "current" Code of Procedure, effective May 1, 2006, with an attached Notice. It is not clear whether W&A has adopted this new Notice, but in any event its second paragraph is identical to the one in the 2005 Notice.

line or Telephone Hearing as provided in the Forum Code of Procedure."

If the debtor fails to respond to the Notice and Second Notice of Arbitration, a Document hearing is held; in such an event, W&A submits documents and awaits a decision by the NAF arbiter.  If the arbiter rules in favor of the credit card company (and the debtor does not pay), W&A enforces that ruling by filing a complaint in state court.

When W&A sues in court to enforce the NAF judgments, it seeks to collect from the debtor the amount awarded by the NAF arbitrator on the original indebtedness, as well as the expenses and fees which W&A incurred in bringing the NAF action in the first place. Therefore, the final amount that W&A seeks in state court after a successful NAF action is greater than the amount of the NAF award on the credit card debt itself.

### C.   Class Representatives

#### 1.   Robin Karnette

Robin Karnette is a Virginia resident who obtained a credit card from MBNA in March 2003.  The Credit Card Agreement between Karnette and MBNA provided that any disputes arising from the account must be submitted to binding arbitration before the NAF, governed by the NAF Code of Procedure.

Karnette accumulated debt in her account with MBNA.  In December 2003, she challenged her credit card debt by filing claims

with a sham "arbitrator," National Arbitration Council ("NAC").[4]
She prevailed in that arbitration and then attempted to enforce
the NAC award in court. However, the enforcement action was
dismissed.

Some time in early 2004, Karnette defaulted on her credit card
debt to MBNA, which referred her account to W&A for collection.
W&A filed an arbitration claim against Karnette, and sent Karnette
the "2003 Notice" on March 2, 2004. Karnette disputed the debt in
writing, but did not request a Participatory hearing. NAF
conducted a Document hearing, found for MBNA, and entered an award
in MBNA's favor on October 18, 2004.

On January 18, 2005, Karnette filed suit against MBNA in
Virginia state court to vacate the NAF award. See Docket No. 58.
Her application to vacate was based on Virginia Code § 8.01-

---

[4] The National Arbitration Council was an entity that duped
credit card holders into believing that they had the right to
arbitrate "disputes" between themselves and their credit card
companies before NAC, for a fee. The United States District Court
for the Middle District of Florida found that "NAC held sham
arbitrations without notice to or participation from [credit card
companies] and, in each instance, entered an "award" in favor of
the cardholder stating that the cardholder was absolved from any
further payments" to the card companies. Citibank (South Dakota)
N.A. v. National Arbitration Council, Inc., 2007 WL 106565, *1
(M.D. Fla. 2007). The NAC awards, however, had no legal force
because credit card agreements, including the ones here, provide
for arbitration before specific arbitrators. The Citibank court
found that NAC tortiously interfered with Citibank's contract and
violated the Florida's Deceptive and Unfair Trade Practices Act,
and issued a permanent injunction against it. According to the
Florida Department of State, NAC was dissolved as a corporation in
2006. See Florida Department of State, Division of Corporations at
http://www.dos.state.fl.us/doc.

581.010, which bans several types of unfair arbitration practices.
See Dkt. No. 58, Ex. A14.[5]  She also made arguments based on the
decision in Bates v. McQueen 613 S.E.2d 566 (Va. 2005), which held
Virginia Supreme Court's that a non-participatory arbitration
process, without prior agreement, is invalid.  Karnette did not sue
W&A in that action, and she made no claims therein based on the
FDCPA.  In either 2005 or 2006, MBNA filed suit in Virginia state
court to enforce the NAF award, and included in the amount sought
W&A's expenses form the NAF Document hearing.  Karnette's and
MBNA's actions were consolidated, and, on October 4, 2006, the
Circuit Court for Fairfax County ruled in favor of MBNA, dismissing
Karnette's claims.  The court based its dismissal on three
alternative holdings.  See W&A's Reply to Plaintiffs' Opposition to
Defendant's Motion to Amend Answer, (Dkt. No. 61), Ex. 2 at 46-49.

---

[5]  Section 8.01-581.010 provides that a court shall vacate an
arbitration award where:

1.   The award was procured by corruption [etc.] . . . ;

2.   There was evident partiality by an
     arbitrator . . .;

3.   The arbitrators exceeded their powers;

4.   The arbitrators refused to postpone the hearing
     upon sufficient cause being shown [etc.]; or

5.   There was no arbitration agreement and the issue
     was not adversely determined in proceedings under §
     8.01-581.02 and the party did not participate in
     the arbitration hearing without raising the
     objection.

First, the state court held that the Federal Arbitration Act ("FAA") governed Karnette's claims, and apparently (the parties have not provided a complete transcript of the court's ruling) that, under the FAA, she had no claim. Id. at 48. Second, and alternatively, the state court held that even if Virginia law governed the dispute, Karnette's claim was factually distinct from Bates, so that the Bates precedent did not apply to Karnette's dispute with MBNA. Id. Third, and again alternatively, the state court reached the merits of Karnette's defenses (which she claimed she would have aired had NAF granted her a Participatory hearing) and found that Karnette did owe the debt, and therefore that "regardless of what happened in this case . . . no right of Ms. Karnette was prejudiced" by NAF's Document hearing. Id. at 48-49.

### 2.   Diane McIntyre

Diane McIntyre is a Virginia resident who defaulted on her credit card debt to MBNA.  McIntyre did not try to vacate her award through any sham "arbitrator."  W&A sent McIntyre the 2003 Notice of Arbitration.  McIntyre responded with a letter (presumably requesting a hearing), but the NAF arbitrator ruled that she had not complied with NAF procedure and denied her request.  Therefore, NAF held a Document hearing, and found in favor of MBNA, which sued to enforce the judgment in Virginia state court, again adding on W&A's expenses and fees from the NAF "hearing."  McIntyre responded with defenses, see Dkt. No. 58, Ex. 20, and also counterclaims

against MBNA.   <u>See</u> <u>Id.</u>, Ex. 21.   The state court dismissed McIntyre's defenses and counterclaims because she had failed to raise her claims within the three-month time limit required by the FAA.   <u>See</u> W&A's Supplementation of the Record (Docket No. 71), Ex. 1 (defenses); Docket No. 58, Ex. 23 (counterclaims).

   D.   **The Class Claims Under The FDCPA**

   Plaintiffs claim that W&A violated three sections of the FDCPA.

   First, they allege that W&A violated section 1692e(2)(A) by misrepresenting the character, amount, or legal status of the class members' debts.   This claim is based on W&A's alleged practice of seeking to collect in state court the amount awarded by the NAF arbitrator on the credit card, as well as W&A's expenses and fees in the NAF arbitration in the first place.

   Second, Plaintiffs allege that W&A violated section 1692e(5) by threatening action that cannot legally be taken or that is not intended to be taken in violation of section.   This claim is based on Plaintiff's argument that NAF Document hearing is illegal in Virginia under <u>Bates v. McQueen</u>.

   Third, Plaintiffs allege that W&A violated subsection 1692e(10) by using false, deceptive, or misleading representations or means in an attempt to collect a debt.   This claim is based on Plaintiffs' allegation that the 2003 and 2005 Notices misinform debtors about their rights to a Participatory hearing before NAF.

## II.   CLASS CERTIFICATION

To obtain class certification, plaintiffs must satisfy the four prerequisites of Fed. R. Civ. P. 23(a), and prosecute a case consistent with at least one of the classes defined in Fed. R. Civ. P. 23(b).

### A.   Rule 23(a)

Rule 23(a)'s four prerequisites for class certification are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class.  Each will be considered in turn.

#### 1.   Rule 23(a)(1) Numerosity

W&A does not contest that the putative class meets the numerosity requirement.  By the W&A's own estimate, the putative class is 1,971 members strong.  These numbers are sufficient to make joinder impracticable.

#### 2.   Rule 23(a)(2) Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class.  See Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001).  The commonality prerequisite focuses on the claims of the class as a whole, and it "turn[s] on questions of

law [or fact] applicable in the same manner to each member of the class." Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

W&A argues that there are no common questions in this case for two reasons.  First, W&A argues that there are no issues common to the class because some members received the 2003 Notice, and others received the 2005 Notice.  The issues respecting the 2003 and 2005 Notices significantly overlap the typicality prerequisite of Rule 23(a)(3), so the Court will not address this argument here in the commonality subsection.

Second, W&A claims that of the putative class members who received the 2003 or 2005 Notices, some did not respond initially, so they were sent the Second Notice by NAF.  This Second Notice explained their rights differently.  W&A argues that there is no commonality between the members who received only the 2003 or 2005 Notice from W&A, and those who received both the Notice and NAF's Second Notice because those putative class members who received the Second Notice enjoyed a supplemental explanation of their rights.

W&A is incorrect because the existence of a Second Notice is irrelevant for the FDCPA claims asserted here. Courts have repeatedly held that the FDCPA focuses on the debt collector's misconduct, not whether debtors were actually deceived.  As the Fourth Circuit put it, "the test is the capacity for the statement to mislead; evidence of actual deception is unnecessary." United States v. Nat'l Fin. Servs., 98 F.3d 131, 139 (4th Cir. 1996).

Because the FDCPA's focus is on the collector's misconduct, it is not relevant whether the class members were actually misled. Therefore, whatever NAF's Second Notice did to correct any misunderstandings caused by the 2003 or 2005 Notice does not affect the FDCPA-based claims in this action, and is not grounds to defeat commonality.

### 3.   Rule 23(a)(3) Typicality

While the numerosity and commonality prerequisites focus on the characteristics of the class members in comparison to each other, the typicality prerequisite focuses on the general similarity of the named representatives' legal and remedial theories to those of the proposed class. See Jenkins v. Raymark Indus., Inc., 782 F.2d 468, 472 (5th Cir. 1986). W&A argues that the proposed class fails the typicality prerequisite for two reasons. First, Karnette and McIntyre received only the 2003 Notice, while many of the class members received only the 2005 Notice. Second, there are defenses unique to Karnette and McIntyre that would overwhelm the class litigation.

### a.   The Two Different Notices (2003 vs. 2005)

W&A argues that, because both Karnette and McIntyre received only the 2003 Notice, their claims are not typical of the claims of those putative members who received only the 2005 Notice.[6]   This

---

[6]   W&A notes that 851 putative class members (those notified up to August 25 2005) received the 2003 Notice, while 1,120 members (those notified since August 25, 2005) received the 2005 Notice.

argument is well-taken.  The typicality prerequisite prevents Karnette and McIntyre from representing class members who received only the 2005 Notice.

In General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982), the Supreme Court held that the typicality prerequisite "effectively limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." 457 U.S. at 156.  Therefore, "a class representative must . . . possess the same interest and suffer the same injury as the class members."  Id. (quotations omitted).  This principle is designed to ensure  that "the named plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence."  Id. at 157 n.13.

In this case, Karnette, McIntyre, and around 851 putative class members received the 2003 Notice, which advised them that "Unless you have agreed otherwise, an In-person Participatory Hearing will be held . . . ."  In contrast, the 2005 Notice stated, "You may request a Hearing in your Response or in a separate writing.  You may select a Document or Participatory Hearing, and you may also request a Hearing on-line or by telephone."  These two notices are different, and would require the plaintiffs to advance different theories about why each is misleading.  An argument that

---

No class member received both Notices unless W&A dunned them for different debts at different times.

13

the 2003 Notice was misleading could, and given the language of the two notices, almost certainly would, make the 2005 Notice look adequate by comparison.

Both Karnette and McIntyre received only the 2003 Notice.  In litigation, it would be essential for their counsel to argue that the 2003 Notice is not adequate, even if those arguments imply that the 2005 Notice is adequate.  In such an event, the interests of the 2005 Notice members would not be adequately protected.  The 2005 Notice members may have their own claim that the language of the 2005 Notice is also misleading, but, if they lost in the present litigation, the doctrines of issue and claim preclusion would bar them from bringing a subsequent action on their own theories.

The Plaintiffs respond that the different forms have "no effect on identifying those who are members of the class" because Plaintiffs are claiming that it is "W&A's use of a non-participatory arbitration process" that violates the FDCPA.  This argument does not begin to address the two-notice problem because Plaintiffs base their "non-participatory arbitration process" claim significantly on the language in the 2003 and 2005 Notices.[7] Plaintiffs suggest that they have at least one other class-wide

---

[7] "As part of its use of a non-participatory hearing process, Defendants used a form notice that misrepresented that a participatory hearing would be held."  Mem. in Support of Plaintiffs' Motion for Class Certification at 2.

theory on which to base their non-participatory-arbitration-process claim,[8] but it is inescapable that the language in the 2003 and 2005 Notices is the linchpin of this class action, and is a crucial, perhaps dispositive, factor on which W&A's liability is likely to rise and fall.[9] If Plaintiffs were allowed to represent the members who received only the 2005 Notice, those members' interest in having a critical legal theory prosecuted vigorously would not be protected.

Because the 2003 and 2005 Notices are different in ways that create a conflict of interests for the class representatives, class certification must be denied as to those putative class members who received only the 2005 Notice.

_____

[8] See Plaintiffs' Opposition Brief to Defendant's Motion to Amend Answer (Docket No. 59). Plaintiffs submit emails revealed in discovery showing that W&A and NAF collaborate in a mail-merge system in order to file complaints. Id. at 2. Plaintiffs are unclear about how such a collaboration violates the FDCPA.

[9] In making this assessment, the Court "peeks" behind the class certification curtain to the merits of the case. This is permissible where the district court must examine the merits in order to fulfill its obligations under Rule 23. See Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits to determine the strength of plaintiffs' case is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits."). Such is the situation here, as the Court must examine the merits to assess the "efficacy of class certification." Cooper v. Southern Co., 390 F.3d 695, 712 (11th Cir. 2004). The factfinder, even if that factfinder is the judge presiding over class certification, is not bound by this assessment at the merits phase. See Gariety, 368 F.3d at 366; In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006).

15

### b.   Unique Defenses

W&A also claims that there are defenses unique to the named representatives that defeat certification under the typicality prerequisite because these defenses would overwhelm the class action litigation.  W&A is incorrect.

### (1)   Issue Preclusion

In their state cases, Karnette and McIntyre both appear to have made claims or counterclaims against MBNA in state court arguing that <u>Bates v. McQueen</u> forbids the arbitration process to which they were subjected.  The state courts ruled against both women.[10]  W&A argues that defensive issue preclusion[11] therefore bars Karnette and McIntyre from raising arguments based on <u>Bates</u> in this action.  This unique defense, argues W&A, is likely to overwhelm the class action litigation.  When defenses unique to class representatives are likely to overwhelm the litigation, continues W&A, the representatives' claims are atypical from those of the class, and certification should be denied.  W&A's argument is

---

[10]   When the first action occurred in state court, "the preclusive effect of the state judgment . . . should be determined according to the law of that state."  Wright, Miller, & Cooper, 18 Federal Practice and Procedure § 4414 n.1.  <u>See also</u>  <u>Graves v. Associated Transp., Inc.</u>, 344 F.2d 894, 896 (hereinafter "F.P.P.") (4th Cir. 1965); <u>Storey v. Patient First Corp.</u>, 207 F. Supp. 2d 431, 437 (E.D. Va. 2002).  The Court applies Virginia's law of preclusion to its analysis here.

[11]   "Defensive issue preclusion occurs when a defendant seeks to prevent a plaintiff from litigating an issue that the plaintiff previously litigated and lost against another defendant."  21A Fed. Proc., L. Ed. § 51:253.

incorrect because issue preclusion does not bar Karnette or McIntyre from re-asserting the <u>Bates</u> claims in this litigation.

Issue preclusion operates on the principle that later courts should honor the first actual decision of a matter that has been litigated previously.  <u>See generally</u> F.P.P. § 4416.  For issue preclusion to apply, Virginia decisions create three general requirements.[12]

First, the issue must actually have been litigated.  <u>Glasco v. Ballard</u>, 452 S.E.2d 854, 855 (Va. 1995).  Second, the issue must actually have been decided.  This is a strict inquiry; the court in the previous action must have decided the "precise issue" that would be precluded in the second action.  <u>Rogers v. Commonwealth</u>, 362 S.E.2d 752, 754 (Va. Ct. App. 1987); <u>see also</u> <u>Whitley v. Commonwealth</u>, 538 S.E.2d 296, 299 (Va. 2000).  Third, the decision on the issue must be "necessarily decided."  The Supreme Court of Virginia has explained that this requires that "the issue [decided in the prior action] must have been essential to the prior judgment."  <u>Glasco</u>, 452 S.E.2d at 855.  As Wright, Miller & Cooper explain the identical federal requirement, "Issue preclusion attaches only to determinations that were necessary to support the

---

[12] Virginia also requires that the parties in the second action must be the same, or in privity, with those in the first action. <u>Bates v. Devers</u>, 202 S.E.2d 917, 920-21 (Va. 1974).  W&A claims that it is in privity with MBNA for these purposes.  Because the Court finds that issue preclusion does not apply, it does not address this argument.

judgment entered in the first action." 18 F.P.P. Practice and Procedure § 4421.[13]

In this case, Virginia's issue preclusion doctrine does not bar McIntyre nor Karnette from litigating in the present case the issues in their previous litigation against MBNA.

McIntyre raised several defenses in MBNA's action against her, apparently including an argument founded on Bates, that W&A would have the Court exclude here on grounds of issue preclusion. See W&A's Supplemental Memorandum of Law (Docket No. 73) at 2. The state court in the first action, however, dismissed McIntyre's claim because she had not filed it within three months of the NAF arbitration, as required by the procedures of the FAA. Docket No. 58, Ex. 23. The state court's ruling never addressed Bates. Because the state court never addressed McIntyre's defenses, McIntyre's Bates claims were never "actually decided" for purposes of issue preclusion. The proposed preclusion therefore fails Virginia's second issue preclusion requirement, and issue preclusion does not bar McIntyre from re-litigating those same claims here.

---

[13] Wright, Miller & Cooper note two rationales for this rule. First, a in a decision that is not necessary to the judgment, "the tribunal that decided the first case may not have taken sufficient care in determining an issue that did not affect the result . . . . Second, appellate review may not be available to ensure the quality of the initial decision." 18 F.P.P. § 4421.

Issue preclusion does not bar Karnette's current claims, either.  In the consolidated case between Karnette and MBNA, the state court ruled: (1) that the FAA, and not Virginia law, governed the action; (2) that alternatively, even if Virginia governed, Bates was factually distinct from her case; and (3) that, again alternatively, the defenses that Karnette would have raised in a participatory hearing were meritless, so she was not prejudiced by NAF's Document hearing.  Docket No. 61, Ex. 2 at 46-49.  In Karnette's case, then, her Bates argument was actually litigated, and was actually decided by the state court.  The first two requirements of issue preclusion are therefore satisfied.  However, the state court reached its holding on three alternative grounds. Its holding regarding Bates (which was in the alternative to its FAA holding) was therefore not "necessary" to its judgment of dismissal.  The previous state court ruling therefore fails the "necessary" requirement of Virginia's issue preclusion doctrine, and the Bates argument is not subject to issue preclusion.

### (2)  Claim Preclusion

W&A seems to suggest--though it does not develop any substantial supportive argument--that, because Karnette and McIntyre brought previous suits against MBNA, they are barred by claim preclusion from bringing this action against W&A.  See W&A's Amended Answer (Docket No. 56), Ex. A at 5 ("Plaintiffs' claims are barred by the doctrine of res judicata.");  W&A's Memorandum of Law

in Opposition to Plaintiffs' Motion for Class Certification (Docket
No. 58) at 17.  Inasmuch as W&A argues that claim preclusion is a
unique defense against both Karnette and McIntyre, it is
incorrect.[14]

As to both Karnette and McIntyre, claim preclusion does not
apply here because the FDCPA claims here are based on a cause of
action distinct from those claims that both women asserted in the
earlier state actions.  While federal claim preclusion applies to
claims arising "out of the same transaction or series of connected
transactions," Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir.
1986), the Virginia rule of claim preclusion, which the Court is
obliged to apply, see Graves, 344 F.2d at 896, bars only claims
arising out of the "same cause of action."  See Bates v. Devers,
202 S.E.2d 917, 920 (Va. 1974) (res judicata applies only to claims
arising out of "same cause of action");  Carter v. Hinkle, 52
S.E.2d 135 (Va. 1949) (holding that because separate causes of
action exist for personal injury and property damage arising out of
the same automobile accident, judgment on one cause of action does
not preclude litigation of a second).  See also Harnett, 800 F.2d
at 1313 n.1 (comparing the scopes of federal and Virginia claim

---

[14]  As in its issue preclusion argument, W&A seems to suggest
that W&A if in privity with MBNA, and that it therefore can assert
claim preclusion (styled res judicata in Virginia) against Karnette
and McIntyre.  Because the Court finds that claim preclusion does
not bar Plaintiffs' claims in any event, the Court need not address
whether W&A is in privity with MBNA.

preclusion, and noting that Virginia claim preclusion is narrower).
Neither Karnette nor McIntyre asserted an FDCPA-based cause of
action in the previous state actions.[15]  Claim preclusion therefore
does not bar their suits in the present action.[16]

### (3)  Judicial Estoppel

W&A claims that it has "a substantial defense" to assert that
Karnette should be judicially estopped from arguing, in this
action, that she should not have been subject to a non-
participatory arbitration hearing because she sought relief from
her debts in a non-participatory arbitration "hearing" before the
sham arbitrator, NAC.  The Court declines this invitation for two
reasons.  First, the fundamental concept of judicial estoppel is
that a party in a judicial proceeding is barred from denying or
contradicting sworn statements made therein.  See 28 Am. Jur.2d
Estoppel § 74 (2007).  Here, Karnette's positions are legal
arguments.  Second, sham arbitrators like NAC victimize debtors,
not creditors.  Debtors like Karnette pay the sham arbitrator a fee
for the arbitration, but courts do not uphold the "awards."  On the

---

[15] Indeed they could not have raised such claims against MBNA
because it was not, in those cases, a "debt collector" under the
FDCPA.  See 15 U.S.C. § 1692a(6).

[16] Additionally, unlike the federal system, Virginia has a
permissive counterclaim rule.  See Capital Tire and Fleet Serv.,
Inc. v. Gaddy Oil Corp., 1986 WL 401835 at *1 (Va. Cir. Ct. 1986).
McIntyre, who made only counterclaims against MBNA, would therefore
not be barred from raising claims against W&A in this case.

face of W&A's pleading, therefore, there is not a strong equitable
reason to estop Karnette's claim.

### (4)   Waiver

W&A asserts that McIntyre waived the claims she asserts here
because she filed an FDCPA claim instead of asserting her claims in
NAF arbitration.   W&A does not develop this argument and it is
difficult to know what that argument would be because the FDCPA
focuses on the debt collector's behavior, see, e.g., Keele v.
Wexler, 149 F.3d 589, 593-94 (7th Cir. 1998), and the behavior
alleged here includes a faulty arbitration process.   Waiver is
therefore not a defense that bars certification on typicality
grounds.

### (5)   Statute of Limitations

W&A argues that Karnette's claim is also barred by the statute
of limitations.   The Court has searched the record in vain for
proof of the date upon which W&A filed a complaint to enforce the
NAF arbitration award, or the date upon which it served Karnette
with the complaint.   The Court therefore must conclude, at least on
this record, that Karnette's complaint in this action is timely.

### 4.   Rule 23(a)(4) Adequacy of Representation

The adequacy of representation prerequisite requires the Court
to be satisfied that "the representative parties will fairly and
adequately protect the interests of the class."   This prerequisite
has three components that are relevant here.

First, the adequacy prerequisite is similar to the typicality prerequisite in that it seeks to ensure that the named plaintiffs will protect the class in matters germane to the claims in the litigation. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997). This feature of the adequacy prerequisite is addressed in the typicality section, supra.

Second, the adequacy prerequisite looks to the personal characteristics of the named plaintiffs themselves to see whether they are fit representatives. W&A argues that Karnette is not a fit representative. In the early 1990s, Karnette pled guilty to possession of cocaine. At some point during the pendency of this case, Karnette answered "no" to an item in a questionnaire that asked her whether she had ever been convicted of a crime of moral turpitude. She subsequently supplemented her answer by disclosing the cocaine conviction. W&A suggests that her conviction and her initial answer make Karnette an unfit representative. This is unpersuasive. Possession of cocaine is not a crime of moral turpitude, so Karnette's initial answer was not misleading. Moreover, a single, decade-old conviction for possession of cocaine, without more, does not make a proposed plaintiff unfit to represent a class.

Third, W&A suggests that one of the class counsel is unqualified because he is unethical. W&A cites an order from the United States District Court for the Northern District of

23

California, ordered O. Randolph Bragg to show cause why he should not be referred to the state bar of California for actions Bragg took in representing a class before that court.   Bragg's "show cause" response was due December 15, 2006 and W&A has not supplemented the record with the results of that order.   The Court must therefore conclude that Bragg was not subject to discipline, and will, at least for now, consider Bragg to be adequate class counsel.   Class counsel appears otherwise qualified to prosecute the case.   Nor is there any objection to the other class counsel.

**B.   Rule 23(b)**

In order to be certified as a class action, the class must satisfy at least one of the class categories defined in Rule 23(b). Plaintiffs here move for certification under both Rule 23(b)(2) and Rule 23(b)(3).

**1.   Rule 23(b)(2)**

Plaintiffs seek certification under Rule 23(b)(2) in order to seek a declaratory judgment by the Court that the 2003 and 2005 Notice violated the FDCPA.   With such a declaratory judgment in hand, the class would then seek statutory damages and attorney's fees and costs; its members would also seek actual damages, if any, in separate litigation.

Rule 23(b)(2) classes may be certified where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

24

injunctive relief or corresponding declaratory relief with respect to the class as a whole."  W&A does not seem to dispute that it acted "on grounds generally applicable to the class."  Rather, it argues that declaratory relief is inappropriate, for two reasons.

First, W&A argues that the FDCPA does not provide for injunctive relief.  That argument misses the point because as Plaintiffs note, numerous FDCPA class actions seeking declaratory relief have been certified pursuant to Rule 23(b)(2).  See, e.g., Woodard ex rel. Woodard v. Online Info. Servs., 191 F.R.D. 502, 506-07 (E.D.N.C. 2000).

Second, W&A argues that, in any event, a declaratory judgment is inappropriate because this is a damages action.  This argument is also incorrect.  The Advisory Committee's Note to Rule 23(b) states that subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed.R. Civ.P. 23(b)(2) advisory committee notes (emphasis added); see also Holmes v. Continental Can Co., 706 F.2d 1144, 1155 (11th Cir. 1983).  Courts have held that monetary relief predominates when the procedural safeguards of notice and opt-out are necessary because "the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case," as this would make the need to inform individual members more urgent. Allison v. Citgo Petroleum Corp., 151 F.3d 402, 413 (5th Cir.

25

1998); <u>Adams v. Henderson</u>, 197 F.R.D. 162, 171 (D. Md. 2000)(quoting <u>Allison</u>).

In this action, plaintiffs are seeking statutory damages, which means that individual consumers need not prove actual, individual damages.  Furthermore, to the extent that actual, individual damages will be sought in this case, those claims can be severed or addressed in one of several acceptable means for addressing damage claims ancillary to other class relief.  For purposes of a declaratory judgment and statutory damages, therefore, the individual class members have identical circumstances: they were all subject to the exact same conduct and "suffered" the exact same statutory damages, and all stand to recover the exact same amount--an equal fraction of the statutory damage award, which would not take into account their individual circumstances or claims.  As a result, for the purposes of (b)(2) certification, the class members do not have "varying circumstances [or] merits."  <u>Allison</u>, 151 F.3d at 413.  Individual monetary damages therefore do not "predominate" over declaratory relief, and certification is appropriate under Rule 23(b)(2).

### 2.   Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate where the court finds that the questions of law or fact common to the members of the class <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other

available methods for the fair and efficient adjudication of the controversy.

### a.   Predominance

W&A argues that common questions of law or fact do not predominate, for four reasons.

First, W&A argues that, because the 2003 and 2005 Notices are different, common issues do not predominate.  For the reasons set forth in the typicality section supra, this argument is persuasive as to the 2005 Notice, but that is not the end of the matter.

Second, W&A argues that many members of the class have ongoing litigation, and some have paid their bills.  As a result, argues W&A, individual issues of claim preclusion, issue preclusion, and accord and satisfaction will predominate.  This is unlikely.  As to claim preclusion, as explained in the typicality section, Virginia has relatively narrow claim preclusion rules.  Unless many of the class members have joined W&A as a defendant in state court, claim preclusion does not apply--and W&A makes no suggestion that many class members did in fact join W&A to previous litigation.  As to issue preclusion, the class members would have had to make specific claims or counterclaims based on the FDCPA to be barred from raising those issues in subsequent litigation.  This seems unlikely and, in any event, W&A provides no evidence that this is the case. Accord and satisfaction is a doctrine dealing with the settlement of debts.  FDCPA claims focus on the misconduct of the debt

collector, regardless of the existence, or amount, of any debt that the debtor might owe.  <u>See, e.g.</u>, <u>Keele v. Wexler</u>, 149 F.3d 589 (7th Cir. 1998)(noting that for FDCPA claims the amount or existence of debt is irrelevant, and certifying a class in which the named plaintiff had paid the bill for which she was dunned). Therefore, any such settlements or payments would be irrelevant to the claims against W&A.

Third, W&A claims that the amounts of the debts at issue are sufficient to justify individual litigation.  W&A provided no evidence to support this claim, and it will be rejected.

Fourth, W&A claims that "individual factual issues underlying the arbitration award are so dissimilar" as to make individual issues predominate.  W&A did not develop this argument, and it will not be further considered.

### b.   Superiority

The Plaintiffs argue that class treatment is superior because the claims are small, and because class members are unlikely to enforce their rights if left to their own devices.  While Plaintiffs' pleadings do not set out precise number amounts, in light of the face of the pleadings and the record before this Court, both these arguments are persuasive.

28

W&A counters that class treatment is not a superior means of treating these claims, for three reasons.[17]  All fail.

First, W&A somewhat confusedly argues that class members can "directly" challenge the validity of MBNA's arbitration awards, while "this proposed class action can, at best, determine W&A's liability for damages under the FDCPA for following NAF's procedures."  This argument is irrelevant.  The purpose of those FDCPA claims is to challenge the practices of the debt collector rather than to litigate the debt itself.  Furthermore, the Court finds no support for W&A's suggestion that it might escape liability because it was using notice forms created by another entity.

Second, W&A argues that it will be hard to parse out personal credit card use from business credit card use, and that this will make the class unmanageable.  Plaintiffs convincingly note, however, that the class covers alleged debt "shown, by W&A's records, to be primarily for personal, family, or household purposes."  In addition, the Plaintiffs note that courts have been considerably inhospitable to this style of objection.  The comments of the United States District Court for the Eastern District of New York are representative: "The need to show that the transactions involved in a particular case are consumer transactions is inherent

---

[17] W&A has withdrawn its argument that this class should be dismissed because of an existing, similar class action in the Southern District of New York.

in every FDCPA class actions [sic].  If that need alone precludes certification, there would be no class actions under the FDCPA." <u>Berrios v. Sprint Corp.</u>, 1998 WL 199842 (E.D.N.Y., March 16 1998). <u>See also</u> <u>Borcherding-Dittloff v. Transworld Sys., Inc.</u>, 185 F.R.D. 558, 563 (W.D. Wis. 1999)("Defendant is wrong to suggest that having to separate consumer debts from commercial debts precludes certification."); <u>Macarz v. Transworld Sys., Inc.</u>, 193 F.R.D. 46, 57-58 (D. Conn. 2000)("[D]efendant's suggestion that their records are not up to the task of differentiating the debts it collects rings hollow.").

Third, W&A repeats its claim preclusion, issue preclusion, and accord and satisfaction claims.  These are addressed in the predominance section, <u>supra</u>.

## III. Conclusion

For the reasons set forth above, the Court DENIES class certification in part and GRANTS class certification in part.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

                                    /s/
                              Robert E. Payne
                              United States District Judge


Richmond, Virginia
Date: March 23, 2007